192 Mich. App. 483 (1992)
482 N.W.2d 460
MICHIGAN PROFESSIONAL EMPLOYEES SOCIETY
v.
DEPARTMENT OF NATURAL RESOURCES
Docket Nos. 118972, 120251.
Michigan Court of Appeals.
Decided January 21, 1992, at 9:25 A.M.
Cheryl Lynn Schmittdiel, for the plaintiffs.
Frank J. Kelley, Attorney General, Gay Secor Hardy, Solicitor General, Thomas L. Casey, Assistant Solicitor General, and Barbara J. Brown and Janet A. VanCleve, Assistant Attorneys General, for the defendants.
Amicus Curiae:
Fraser Trebilcock Davis & Foster, P.C. (by Michael E. Cavanaugh), for Michigan State Employees Association.
Before: NEFF, P.J., and GILLIS and MICHAEL J. KELLY, JJ.
GILLIS, J.
In Docket No. 118972, plaintiffs appeal as of right from the circuit court's order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) in an action involving plaintiffs' request for certain documents under the Freedom of Information Act (FOIA), MCL 15.231 et seq.; MSA 4.1801(1) et seq. We reverse and remand for further proceedings consistent with this opinion. In Docket No. 120251, plaintiffs appeal as of right from the circuit court's order denying their motion for summary disposition and, instead, entering summary disposition in favor of defendants pursuant to MCR 2.116(C)(10) in an action involving plaintiffs' request for certain documents under the Employee Right to Know Act, MCL 423.501 et seq.; MSA 17.62(1) et seq. We affirm in part, reverse in part, and remand for further proceedings *486 consistent with this opinion. These cases were consolidated on appeal.
Plaintiff Charles Riley works for defendant Department of Natural Resources. Riley, along with nineteen others, applied for two positions. Riley was interviewed by a three-member panel, which had a seven-page questionnaire in which they could record the interviewee's answers and their impressions. A summary statement was also prepared by each interviewer.
The interviewee was asked to provide the names of references. Riley provided the names of two references during his interview. The references of the top interviewees were contacted by the interviewing panel's chairperson and asked questions on matters contained in the questionnaire. The chairperson made notes of the references' responses.
Thereafter, the interview panel reached a consensus opinion concerning the interviewees. Normally, the chairperson would send a memorandum containing the consensus evaluation, including a summary of the references, to the chief of the division where the vacancy exists, who, if concurring in the evaluation, would send the package to the Equal Employment Opportunity executive for the DNR. In this case, however, the division chief was the chairperson; so he merely forwarded the package to the EEO executive.
After compliance with the selection procedure is confirmed, the EEO executive submits the package to the Michigan Equal Employment and Business Opportunity Council (MEEBOC) if the open position is above a certain level. In this case, the open positions were above that level. If the MEEBOC approves the selection process, the DNR may offer the open position to the person selected.
We note that the DNR'S hiring policies are contained *487 in a personnel manual and provide that the chairperson should be available to discuss interview results with unsuccessful candidates.
Plaintiff Riley was an unsuccessful candidate. Thereafter, he sent a letter to the DNR stating:
I am requesting copies of all documents which I am named or my person is implied, resulting from the application screening, interview and appointment process for the two ... positions.... This request includes, but is not limited to, handwritten notes made during interviews, scoring sheets, summary evaluations, EEO justifications and reference verification summations. I am not requesting actual test questions, only my answers as interpreted by the interviewers and their evaluations based on those answers. I understand that the names of other candidates will be deleted from these documents to preserve their privacy. (Emphasis in original.)
The DNR denied Riley's request pursuant to MCL 15.243(1)(n); MSA 4.1801(13)(1)(n), which provides in part:
A public body may exempt from disclosure as a public record under this act:
* * *
Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption shall not apply unless the public body shows that in the particular instance the public interest in encouraging frank communications between officials and employees of public bodies clearly outweighs the public interest in disclosure.
Thereafter, Riley sued, claiming that the Michigan Professional Employees Society was his exclusive *488 representative and that defendants had improperly denied his request under the FOIA.
On the same day Riley filed his FOIA complaint, he wrote a letter to Cordree McConnell, the EEO executive, asking to review his personnel file pursuant to the Employee Right to Know Act. Riley also requested, pursuant to the FOIA and the Employee Right to Know Act, copies of all documents in the file "resulting from the interview and appointment process." The letter then stated:
This request includes, but is not limited to handwritten notes, scoring sheets, summary evaluations, EEO justification and reference verification summaries.
I understand that the names of other candidates and references will be deleted from the documents supplied to preserve their privacy.
In response, McConnell advised Riley that he could review his personnel file at any time, but the information that he sought pursuant to the FOIA was not contained therein. McConnell advised Riley that processing his FOIA request would take ten days.
Thereafter, Riley received a letter denying his request for handwritten interview notes and reference verifications as well as material redacted in the documents Riley was given. In addition to citing MCL 15.243(1)(n); MSA 4.1801(13)(1)(n) as a reason for denying Riley's request, defendants also cited MCL 15.243(1)(a) and (1); MSA 4.1801(13)(1)(a) and (1), which provide:
A public body may exempt from disclosure as a public record under this act:
Information of a personal nature where the public disclosure of the information would constitute *489 a clearly unwarranted invasion of an individual's privacy.
* * *
Test questions and answers, scoring keys, and other examination instruments or data used to administer a license, public employment, or academic examination unless the public interest in disclosure under this act outweighs the public interest in nondisclosure.
Riley received a copy of the division chief's memorandum to McConnell, which contained the consensus evaluations, but which was redacted by deletion of the candidates names, including Riley's, as well as pronouns and the reference summaries. Riley also received the copies of the memoranda that were sent to the MEEBOC, which were likewise redacted.
Riley then filed a separate complaint, claiming that defendants had violated the Employee Right to Know Act by failing to provide him the information requested in its entirety. Riley also amended his FOIA complaint, alleging that the information provided was tantamount to a complete denial, given defendants' redactions, and that he was entitled to release of the information requested.
Defendants in the FOIA case moved for summary disposition, claiming that there was no genuine issue of material fact. Defendants first contended that they properly denied Riley's initial FOIA request pursuant to MCL 15.243(1)(n); MSA 4.1801(13)(1)(n). Defendants argued that the documents sought were preliminary to the DNR'S hiring decision and contained matters that were not purely factual, including the interviewers' individual and consensus opinions. Defendants conceded that the public had an interest in fair and objective *490 hiring procedures that are based on merit and fitness; however, they argued that these interests were best served by protecting frank communications between the interviewers and between the chairperson and the persons giving references. Defendants noted that disclosing the names of applicants could harm their current employment or cause embarrassment if the interviewers' evaluations were negative or they were not selected. Defendants also noted that staff members might be unwilling to serve on panels and might be less candid if they knew that their remarks would be disclosed to the interviewees. As a result, the interview process would be impaired.
Defendants also claimed that the information provided to Riley was all he was entitled to pursuant to the FOIA. Defendants claimed that Riley was not entitled to the interviewers' handwritten notes, because they were nonfactual and preliminary to the hiring decision and because the public interest in encouraging frank communications between officials and employees of public bodies clearly outweighed the public interest in disclosure. Defendants stated that if the interviewers knew that their notes were subject to public scrutiny, they would take fewer notes and rely solely on their memories in discussing the candidates. Because the interviewers interviewed many candidates, their ability to recall certain candidates and correctly rate them would be impaired. To the extent the interviewers' notes indicated answers to test questions, defendants claimed that they were exempt pursuant to MCL 15.243(1)(1); MSA 4.1801(13)(1)(1).
Defendants further claimed that Riley was not entitled to the answers the references provided the chairperson pursuant to MCL 15.243(1)(a) and (n); MSA 4.1801(13)(1)(a) and (n). Defendants claimed *491 that disclosing those answers would invade the privacy of the person making the reference, as well as that of the subject of the reference. Defendants contended that the references also contained nonfactual matter and were preliminary to the final hiring decision. Defendant argued that the public interest in frank communications of references outweighed the public interest in disclosure.
Defendants likewise contended that the consensus evaluations contained in the memoranda to the EEO executive and the MEEBOC were exempt from disclosure pursuant to MCL 15.243(1)(a) and (n); MSA 4.1801(13)(1)(a) and (n). Nevertheless, defendants claimed that they had disclosed the consensus evaluations contained in the memoranda after redacting pronoun and identity information, as well as all nonfactual matters.
Finally, defendants claimed that the reference summaries of the top candidates were properly redacted from the copies of the memoranda sent to the EEO executive and the MEEBOC pursuant to MCL 15.243(1)(a) and (n); MSA 4.1801(13)(1)(a) and (n). Defendants argued that these contained purely predecisional, subjective opinions. Moreover, defendants claimed that the public interest is best served by frank comments of references that are not tempered by the possibility of disclosure. In addition, disclosure of the remarks of a reference could result in an invasion of the interviewee's privacy.
Defendants submitted affidavits in support of their motion.
In response to defendants' motion, plaintiffs claimed that MCL 15.243(1)(a); MSA 4.1801(13)(1) (a) did not apply, because Riley had requested information concerning only himself. Plaintiffs also claimed that MCL 15.243(1)(1); MSA 4.1801(13) (1)(1) did not apply, because the Civil Service Commission *492 rather than the DNR had the ability to prepare public employment examinations. Plaintiffs further contended that the handwritten notes, reference verifications, summary evaluations, and EEO justifications were not exempt from disclosure, because they were not preliminary to a final decision and did not cover anything but factual matters. Plaintiffs contended that the letters from McConnell to the MEEBOC, the EEO justifications, were final because they concluded that Riley was an unsuccessful candidate. Plaintiffs also contended that the matters covered were factual because they depicted Riley as an unacceptable candidate. In any event, plaintiffs claimed that defendants did not demonstrate that the public interest in encouraging frank communications clearly outweighed the public interest in disclosure. Plaintiffs contended that Riley stood in the position of the public and that his interest in disclosure, like any member of the public in his situation, was paramount to his interest in encouraging frank communications. Plaintiffs noted that Riley had been on several interview panels and had offered to discuss the results of the interviews with unsuccessful interviewees. Plaintiffs also submitted the deposition of a DNR employee, who indicated that at the end of an interview in which he had been an interviewer he had told the unsuccessful interviewees that he would schedule an appointment with them to discuss the reasons for the result. In response to a request arising out of that offer, the DNR employee had allowed an unsuccessful candidate to look at the records. The DNR employee did not specify which records he allowed to be reviewed, and he testified that he did not know if this procedure detracted from the interview process. In any event, plaintiffs submitted an affidavit by Riley indicating that knowing his notes would *493 be revealed to the interviewees would not impair his note taking, because he would not write anything down that could not be justified. Hence, plaintiffs claimed that frank communication would not be discouraged by disclosure to an unsuccessful interviewee.
The circuit court was provided with the unredacted documents for in camera inspection before ruling on defendants' motion. Concerning the interviewers' handwritten notes, the circuit court held that MCL 15.243(1)(a); MSA 4.1801(13)(1)(a) was inapplicable because Riley sought information that related only to himself. However, the court concluded that the notes were advisory in nature, covered other than purely factual materials, and were preliminary to the agency action of employment. Noting that MCL 15.243(1)(n); MSA 4.1801(13)(1)(n) requires the public interest in encouraging frank communications between officials and employees of public bodies to clearly outweigh the public interest in disclosure, the court stated:
[A]ny personal benefit to be derived by Plaintiff through disclosure of the answer evaluations is greatly outweighed by the public interest in protection of the discretionary employment decision-making process. Defendants have, therefore, shown that the public interest in encouraging frank communications where the employment of public officers is involved greatly outweighs the limited interests of plaintiff.
Concerning the remaining redacted documents provided to Riley, the court held that information concerning other people was properly excluded pursuant to MCL 15.243(1)(a); MSA 4.1801(13)(1)(a). Moreover, the court held that the redacted information was also properly withheld pursuant to MCL 15.243(1)(n); MSA 4.1801(13)(1)(n). Hence, the *494 court concluded that defendants had complied with the FOIA by separating the exempt material from the nonexempt material and providing Riley with the nonexempt material. MCL 15.244; MSA 4.1801(14). The court then granted defendants' motion for summary disposition, and plaintiffs appealed as of right.
We will now address the issues raised in Docket No. 118972, before discussing further facts in relation to Docket No. 120251. Plaintiffs first claim that Riley's name, as well as personal information concerning Riley, was improperly redacted from the documents he was provided. Plaintiffs argue that no invasion of privacy would occur from the disclosure of this information. Riley's name was deleted from the summary in the memorandum sent to the EEO executive, as was identifying information in the summaries contained in the EEO justifications. Defendants respond that the summaries should have been deleted pursuant to MCL 15.243(1)(n); MSA 4.1801(13)(1)(n). Plaintiffs claim that the court improperly applied MCL 15.243(1) (n); MSA 4.1801(13)(1)(n), because it weighed Riley's interest in disclosure rather than the public interest in disclosure. We note that plaintiffs themselves equated the public interest with Riley's interest. In any event, defendants concede that it is the public interest rather than the individual's interest that must be balanced. However, defendants claim that the public interest is described in MCL 15.231(2); MSA 4.1801(1)(2) as an interest in being informed so that members of the public may participate in the democratic process. Defendants contend that if the documents sought are released, the hiring process will be impaired for the reasons discussed in its motion for summary disposition. Plaintiffs respond that the circuit court improperly accepted defendants' claim that the public interest *495 in frank communications clearly outweighed the public interest in disclosure, in view of Riley's affidavit and the deposition testimony of the DNR employee that he discussed records with and showed records to unsuccessful interviewees. Additionally, amicus curiae argues that the circuit court's opinion is conclusory, because it does not state why the public interest in encouraging frank communications between public officials clearly outweighs the public interest in disclosure. We agree with plaintiffs and amicus curiae and, therefore, reverse and remand so that the circuit court may determine whether there is any genuine issue of material fact concerning whether the public interest in frank communications between officials and employees of public bodies clearly outweighed the public interest in disclosure of the documents requested and, if so, to specifically state its findings in that regard.
We now turn to the remaining discussion of the facts and issues raised in Docket No. 120251. Plaintiffs moved for summary disposition, claiming that they were entitled to the information requested under the Employee Right to Know Act, which entitled Riley to review his personnel record. MCL 423.501(2)(c); MSA 17.62(1)(2)(c) provides in part:
"Personnel record" means a record kept by the employer that identifies the employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation, or disciplinary action.... A personnel record shall not include:
(i) Employee references supplied to any employer if the identity of the person making the reference would be disclosed.
(ii) Materials relating to the employer's staff *496 planning with respect to more than 1 employee, including salary increases, management bonus plans, promotions, and job assignments.
Plaintiffs claimed that defendants had denied them access to documents that fell within the definition of personnel record on the ground that they were not in Riley's personnel file. Plaintiffs further claimed that defendants denied access on the ground that only the Civil Service Commission could determine qualifications and, therefore, the documents requested were used not to determine an employee's qualifications for promotion, but rather to determine a candidate's acceptability for that position.
In response, defendants claimed that the chair-person's notes on the interview sheet concerning his oral interview of the references were employee references pursuant to MCL 423.501(2)(c)(i); MSA 17.62(1)(2)(c)(i) and were exempt because disclosure would reveal the identities of the references. Defendants also claimed that the memorandum to McConnell was not a personnel record because it was material relating to the DNR'S staff planning with respect to more than one employee. MCL 423.501(2)(c)(ii); MSA 17.62(1)(2)(c)(ii). Defendants further claimed that the handwritten interview notes, as opposed to the consensus evaluations, did not affect promotion, but were used by the interviewers to recall a candidate and reach a consensus evaluation.
At the hearing on their motion, plaintiffs claimed that the chairperson's notes on the reference verification sheet were not submitted by the reference, but were the chairperson's interpretation of what was said. Defendants requested summary disposition in their favor at the hearing.
The circuit court held that the chairperson's *497 handwritten notes concerning the reference verification, the memorandum to the EEO executive, and the EEO justification were excluded from the definition of personnel record pursuant to MCL 423.501(2)(c)(i); MSA 17.62(1)(2)(c)(i). The court then held that the handwritten notes taken during the interview were not personnel records in the traditional sense, stating that they were made to assist the interviewer in recalling the interviewee. Hence, the court granted summary disposition in favor of defendants.
On appeal, plaintiffs claim that the handwritten notes taken by the chairperson during the reference verification do not fall within the scope of MCL 423.501(2)(c)(i); MSA 17.62(1)(2)(c)(i). Plaintiffs argue that the notes were not written or signed by the references, but merely represented the chairperson's subjective interpretation of what the references purportedly said. We hold that the statute does not require the reference to be in a certain form. Hence, we conclude that oral references that are transcribed come within the reference exemption.
Plaintiffs further rely on Muskovitz v Lubbers, 182 Mich App 489; 452 NW2d 854 (1990), for the proposition that the purpose of MCL 423.501(2)(c) (i); MSA 17.62(1)(2)(c)(i) is to protect the identity of the person giving the reference. Therefore, plaintiffs argue that they are entitled to see the contents of the references.
In Muskovitz, the plaintiff, a professor, sought copies of peer evaluations. In response to the plaintiff's request for these documents pursuant to the Employee Right to Know Act, her employer provided her with verbatim comments contained in four peer evaluations in a reordered format. The names of the peers were deleted. The plaintiff filed suit seeking the complete peer evaluations *498 without deletion of the names. The circuit court ruled that the names of the peers were protected under the reference exemption. The court ordered that the peer evaluations be disclosed in such a way that the peers' identities would not be disclosed. The court concluded that this could be done by reordering the comments. The plaintiff appealed, and this Court affirmed. This Court agreed that peer reviews should be treated like references. This Court then held that the purpose of the reference exemption was to protect the identity and privacy of the person supplying the reference. Hence, this Court concluded:
[W]e find that the trial court's decision to prevent identification of the makers of the references, yet still allow discovery of the substance of those references, is the most "reasonable" construction possible of subsection (2)(c)(i). In this way, plaintiff receives as much information as possible concerning the basis for the university's salary decision without violating the legislative intent manifest in subsection (2)(c)(i) to protect the privacy of those making the evaluation. This interpretation of the statute also protects the integrity and effectiveness of the university's peer evaluation system. Such a system is necessarily dependent on the maintenance of strict confidentiality without which meaningful participation of the faculty would be chilled. [Id., pp 498-499.]
Defendants attempt to distinguish Muskovitz on the ground that professors are required to evaluate peers, whereas references are voluntary. Where references are involved, defendants argue, it is necessary to protect their confidentiality in order to ensure candor and to prevent reprisals by unsuccessful interviewees, because the persons making the reference cannot claim that the reference was required. We do not believe that the *499 Muskovitz language should be so narrowly construed. Nonetheless, we note that Muskovitz was decided after the circuit court rendered its decision in this case, and, therefore, we remand so that the circuit court may determine which, if any, contents of the references may be disclosed consistent with Muskovitz.
Plaintiffs next claim that the memorandum to the EEO executive and the EEO justifications were not exempt pursuant to the staff-planning exemption, because some of the interviewees were not part of the staff. Plaintiffs and defendants both note that the circuit court cited the reference exemption in ruling that these documents were not part of the personnel file. The reference summaries made up only a portion of the memorandum. In any event, we hold that the memoranda related to staff planning with respect to more than one employee, namely, promotions, even though those outside the DNR could apply. Amicus curiae suggests that if information concerning the other candidates is deleted, the memorandum and the justifications will involve only one person, plaintiff Riley. Even though such a procedure was applied in Muskovitz, we decline to apply it to the staff-planning exemption, because the exemption's effect would be nullified.
Finally, plaintiffs claim that the handwritten notes taken during the interview fell within the definition of personnel record and were not exempt. Defendants again claim that the interviews were used to determine an interviewee's acceptability for the vacant position rather than his qualifications, which were specified by the Civil Service and required to be met before he could be interviewed. Defendants also argue that the handwritten notes are not personnel records in the traditional sense, but merely used to assist the interviewers *500 in recalling the interviewee's answers and recording the interviewers' subjective impressions. Defendants further argue that it is the consensus evaluations that determine an interviewee's ranking, not the notes of the individual panel members. We hold that the handwritten notes are a record kept by the employer that identifies an employee. Moreover, the notes have been used relative to that employee's qualifications for promotion and, therefore, should have been made available to Riley.
In Docket No. 118972, we reverse and remand for further proceedings consistent with this opinion. In Docket No. 120251, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion. We do not retain jurisdiction.